**DIXIE OIL COMPANY OF ALABAMA, INC., Plaintiff,**

v.

**TEXAS CITY REFINING, INC., et al., Defendants.**

Civ. A. No. 73E-33(R).

United States District Court, S. D. Mississippi, E. D.

Aug. 30, 1973.

Thomas D. Bourdeaux, Meridian, Miss., for plaintiff.

R. B. Deen, Jr., Meridian, Miss., for defendants.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

In this action, plaintiff has filed a 3 count action seeking injunctive relief and damages, the first count alleging a breach of contract, and the other two counts being based on alleged violations of anti-trust laws. Plaintiff has offered no proof of anti-trust violations and these counts are considered as dismissed by the Court. Plaintiff has also, by stipulation, waived a jury trial, and, the action has been heard on its merits.

In its allegations of breach of contract, Dixie Oil Company of Alabama, Inc., an independent distributor of gasoline at both the retail and wholesale level, relies primarily on an alleged agreement between it and Rebel Oil Co., formerly a partnership, and later incorporated as Rebel Oil Co., Inc., whereby Dixie agreed to purchase gasoline from Rebel and Rebel agreed to sell gasoline to Dix-

ie. Co-defendant, Texas City Refining, Inc., which processes crude oil into gasoline at its Texas refinery, referred to herein as TCR, during the existence of this relationship between Dixie and Rebel, acquired all the stock of Rebel. Plaintiff contends that at a meeting in Tuscaloosa, Alabama, in the latter part of 1964, attended by officials of plaintiff, of Rebel and of TCR, plaintiff was informed of TCR's acquisition of Rebel; that at this same meeting TCR acknowledged that it, through Rebel, would continue the same relationship then existing between Dixie and Rebel, and further that this arrangement was later confirmed in writing in a letter from William H. Fetter, president of both Rebel and TCR, to plaintiff, dated September 2, 1965, in which Fetter, on behalf of Rebel, agreed to maintain the same "supply arrangements" as before TCR's acquisition of Rebel. Plaintiff also relies on an agreement, designated as Exhibit A to the complaint, Exhibit P-1 to the testimony.

Plaintiff contends that there was originally an enforceable, oral contract between it and Rebel, subsequently reaffirmed by both defendants, orally and in writing. Although conceding that the agreement was for an indefinite duration and therefore cancellable upon reasonable notice, plaintiff says that it has not been given reasonable notice of Rebel's intention to cancel deliveries of gasoline after July 31, 1973, will suffer irreparable harm by such cancellation, is entitled to an injunction directing defendants to continue deliveries, and is entitled to damages for lost profits during such time as deliveries have not been made.

Defendants, on the other hand, maintain that they have entered into neither an oral or written contract with plaintiff, nor was the original relationship between Dixie and Rebel such as to constitute an enforceable contract. That the relationship was merely that of an open account between a seller and a buyer. Further that plaintiff could cease its purchase of gas from defendants at any time, this option rendering the relationship unenforceable for lack of consideration.

The Court has considered carefully all of the evidence, particularly that relied on by plaintiff, and finds that plaintiff has failed to meet its burden of proving an enforceable contract. There was a mutual intention on the part of both Dixie and Rebel for Dixie to buy its gasoline from Rebel and for Rebel to sell gasoline to Dixie. As long as Rebel had an ample supply, such an arrangement was of mutual benefit to both. The Court is convinced that defendants, too, are caught in the current gasoline shortage, not of their own doing, and must determine how they shall best sell a limited product. To continue sales to those with whom they have contracted, and to discontinue sales to non-contracting customers is their legal right.

Plaintiff concedes that it had the right to terminate any agreement to buy from defendants. Indeed in an open market, independent jobbers guard jealously their right to buy from whom they please. The testimony showed that plaintiff had the right to determine how much gas it would buy, when it would buy, and where it would accept delivery. Plaintiff, here, admits occasions when it did not buy exclusively from defendants. With these options, the relationship is a one-way street. Plaintiff's protection was by way of a contract based on a valid consideration. The Court finds none here. Exhibit P-1 is nothing more than an agreement releasing Rebel's right to a trademark, and setting out what plaintiff should be required to do with reference to eliminating its use of this trademark and identifying colors in the event plaintiff should quit buying from Rebel.

Fetter's letter of September 2, 1965, referring to supply arrangements, promises nothing more than the original, oral agreement, sealed by a handshake, that Dixie would buy gas from Rebel and that Rebel, as long as it had gas available, would sell to Dixie. Defendants have conclusively shown that their gas production is presently confined to their

own use and to that of customers with which they have binding contracts.

I therefore find that plaintiff's suit should be dismissed with court costs assessed to plaintiff.

An order to this effect may be submitted.